1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LARRY MANUEL LECHUGA,

11              Petitioner,                    No. CIV S-07-0487 JAM CHS P

12        vs.

13   JOHN W. HAVILAND,[1] et al.,

14              Respondents.               FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.     INTRODUCTION

17              Petitioner Larry Lechuga is a state prisoner proceeding pro se with a petition for

18   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Lechuga attacks his conviction in the

19   Sacramento County Superior Court, case number 04F09812, for first degree burglary.

20   II.    ISSUES

21              The petition raises four issues as follow, verbatim:

22        A.     Petitioner was denied due process and a fair trial by the exclusion of evidence of
                 his spontaneous declaration uttered while he was being beaten immediately after
23

24   _____
            [1] Petitioner named D.K. Sisto, the former warden of California State Prison Solano as
25   Respondent.  John W. Haviland is the current warden of California State Prison Solano.  Federal
     Rule of Civil Procedure 25(d) allows the successor of a public office to automatically be
26   substituted as a party.  Accordingly the clerk is directed to change the name of Respondent to
     John W. Haviland.

1

1       running from the residence.

2   B.      The imposition of a 45 years to life sentence on this mentally retarded defendant
            who did nothing violent, violates the prohibitions of the Eight [sic] and
3           Fourteenth Amendments and Article 1, §17.

4   C.      The court abused its discretion when it denied petitioner's <u>Romero</u> motion to
            strike seven of eight strikes.
5
6   D.      Petitioner was denied a fair trial when the court refused to instruct the jury in the
            language of CALJIC No. 2.21.2 that a witness who is willfully false in one
            material part of his testimony is to be distrusted in other parts of his testimony.
7   /////

8       Upon careful consideration of the record and the applicable law, the undersigned

9   will recommend that petitioner's petition for habeas corpus relief be denied.

10  III.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

11  A.      <u>Facts</u>[2]

12          On November 7, 2004, at around 4:00 a.m., Howard Meadows was
            at his home in Sacramento. Meadows's parents were asleep and he
13          was in his bedroom watching a movie. Meadows's dog was with
            him. The bedroom door was open, and the back door of the house
14          was unlocked.

15          Meadows saw his dog turn her head and make a strange gesture.
            He looked up and saw a low, dim light illuminating the hallway in
16          a panning motion. Meadows got up to investigate and saw
            defendant in the hallway. Defendant was unknown to Meadows
17          and did not have permission to be in his house. Defendant turned
            and ran out the back door. Meadows chased him and caught him
18          when he reached the fence of a house across the street. Meadows
            tackled defendant and wrestled him to the ground. Defendant
19          dropped a pair of cotton gardening gloves by the fence. Meadows
            dragged defendant back to his front yard and yelled for his parents
20          to help him. Although defendant resisted, Meadows held
            defendant down.
21
            Meadows's father came outside and retrieved some plastic zip ties
22          to restrain defendant. Meadows tied up defendant's ankles and
            Meadows's stepmother telephoned 911.
23

24          [2] This statement of facts is taken from the October 30, 2006, opinion by the California
25  Court of Appeal for the Third Appellate District (hereinafter Opinion), filed with respondent's
    answer as Lodged Document No. 4. These facts have not been rebutted with clear and
26  convincing evidence and therefore are presumed correct. 28 U.S.C. § 2254(e)(1); <u>Taylor v.</u>
    <u>Maddox</u>, 336 F.3d 992, 1000 (9th Cir. 2004).

1
2
3
4
5

> Sacramento County Sheriff's Deputy Duncan Brown arrived at
> Meadows's residence and saw defendant lying in the street.
> Officer Brown followed Meadows as he retraced his pursuit of
> defendant.  Officer Brown located a pair of tan gloves lying near a
> fence across from the Meadows's home.  Officer Brown retrieved
> from defendant's belt a small flashlight with a minimal light beam.
> Officer Brown opined that such a flashlight was preferable to an
> ordinary flashlight, which would draw too much attention to the
> perpetrator.

6

> Defendant did not testify.

7 Opinion at 2-3.

8       A jury convicted Lechuga of first degree burglary.  Id. at 1.  The trial court found

9 true allegations that Lechuga suffered four prior serious felony convictions and eight strikes,

10 arising from eight prior first degree burglary convictions.  Id.  The trial court declined to strike

11 any of Lechuga's prior convictions for purposes of sentencing and imposed a term of 25 years to

12 life, plus 20 years.  Id.

13       B.    Post Trial Proceedings

14       Respondent acknowledges that all issues raised in this petition were exhausted in

15 state court proceedings.  Lechuga timely appealed to the California Court of Appeal, filing his

16 opening brief on September 9, 2005.  Answer, Lodged Doc. 1.  That appeal was denied in a

17 reasoned opinion on October 30, 2006.  Answer, Lodged Doc. 4.

18       Lechuga then timely petitioned the California Supreme Court for review on

19 November 21, 2006.  Answer, Lodged Doc. 5.  That petition was summarily denied on January

20 3, 2007.  Answer, Lodged Doc. 6.  Lechuga then filed a petition for writ of habeas corpus in the

21 California Supreme Court on October 25, 2007.[3]  Answer, Lodged Doc. 7.  That petition was

22 summarily denied on April 16, 2008, with a citation to In re Waltreus, 62 Cal.2d 218 (Cal. 1965)

23 (holding contentions raised and rejected on appeal cannot be renewed in state petition for habeas

24 corpus).

25 ─────────────────

26       [3] Lechuga filed this federal petition on March 13, 2007, but was granted a stay on
September 25, 2008, to exhaust his state court remedies.  That stay was lifted on April 3, 2009.

IV.    APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

/////

Although "AEDPA does not require a federal habeas court to adopt any one methodology," Lockyer v. Andrade, 538 U.S 63, 71 (2003), there are certain principles which guide its application.

First, the "contrary to" and "unreasonable application" clauses are different.  As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

/////

Bell v. Cone, 535 U.S. 685, 694 (2002).  It is the habeas petitioner's burden to show the state court's decision was either contrary to or an unreasonable application of federal law.  Woodford

4

v. Visciotti, 537 U.S. 19, 123 S. Ct. 357, 360 (2002).  It is appropriate to look to lower court

decisions to determine what law has been "clearly established" by the Supreme Court and the

reasonableness of a particular application of that law.  See Duhaime v. Ducharme, 200 F.3d 597,

598 (9th Cir. 2000).

   Second, the court looks to the last reasoned state court decision as the basis for

the state court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  So long as the

state court adjudicated petitioner's claims on the merits, its decision is entitled to deference, no

matter how brief.  Lockyer, 538 U.S. at 76; Downs v. Hoyt, 232 F.3d 1031, 1035 (9th Cir. 2000).

   Third, in determining whether a state court decision is entitled to deference, it is

not necessary for the state court to cite or even be aware of the controlling federal authorities "so

long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v.

Packer,  537  U.S. 3, 8 (2003).  Moreover, a state court opinion need not contain "a formulary

statement" of federal law, so long as the fair import of its conclusion is consonant with federal

law.  Id.

V.  DISCUSSION

  A.  Exclusion of Evidence

    1)  Description of Claim

   Lechuga argues that "while being beaten" by the victim he made the statement, "I

thought, I was at my girlfriends house."  Petition at 5.  He argues that he was denied due process

and a fair trial by the trial court's ruling to exclude that statement from evidence.

    2)  State Court Opinion

The California Court of Appeal rejected this claim stating:

> In this case, the trial court found that an opportunity for fabrication
> had intervened before defendant made the disputed statement.  The
> court explained that defendant's "history shows he is a residential
> burglar," and that his response was "a learned response that he has
> had to learn from his occupation."  The court further explained, "it
> is a very brief statement, it is easily imagined or contrived, doesn't
> take long to contrive it, and, with his history, the Court finds that

5

this is not a totally unexpected event that he would be totally surprised by."

Rather than demonstrating that these findings lack evidentiary support, defendant simply argues that the trial court should have made different findings that favored him: that his "statement was made while [he] was still under the stress of the excitement caused by what he had just seen and experienced.  He had just seen that he was at the wrong house.  He was chased away and then tackled and beaten."

Because the record supports the trial court's findings, defendant has not shown an abuse of its broad discretion.  (<u>People v. Poggi</u>, <u>supra</u>, 45 Cal.3d at pp. 318-319.)  Application of the ordinary rules of evidence did not violate defendant's due process right to present his defense. (<u>People v. Fudge</u> (1994) 7 Cal.4th 1075, 1102-1103; <u>People v. Mincey</u> (1992) 2 Cal.4th 408, 440; <u>People v. Hall</u> (1986) 41 Cal.3d 826, 834.)

/////

Opinion at 5

        3)    <u>Applicable Law</u>

Due process may be violated when excluded hearsay testimony bears "persuasive assurances of trustworthiness" and is "critical" to the defense.  <u>Chambers v. Mississippi</u>, 410 U.S. 284, 302 (1973); <u>see also</u> <u>Chia v. Cambra</u>, 360 F.3d 997, 1003 (9th Cir. 2004).  "State and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials."  <u>Holmes v. South Carolina</u>, 547 U.S. 319, 324 (2006) (quotations and citations omitted); <u>see also</u> <u>Montana v. Egelhoff</u>, 518 U.S. 37, 42 (1996) (holding that due process does not guarantee a defendant the right to present all relevant evidence).  Such latitude is limited, however, by a defendant's constitutional rights to due process and to present a defense, rights originating in the Sixth and Fourteenth Amendments.  <u>See Holmes</u>, 547 U.S. at 324.

In deciding whether the exclusion of evidence violates the due process right to a fair trial or the right to present a defense, the court balances the following five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or

6

1  merely cumulative; and (5) whether it constitutes a major part of the attempted defense.  <u>Chia v.</u>

2  <u>Cambra</u>, 360 F.3d 997,1004 (9th Cir. 2004) (citing <u>Miller v. Stagner</u>, 757 F.2d 988, 994 (9th Cir.

3  1985)); <u>Drayden v. White</u>, 232 F.3d 704, 711 (9th Cir. 2000) (same).  The court also must give

4  due weight to the state interests underlying the state evidentiary rules on which the exclusion

5  was based.  <u>See</u> <u>Chia</u>, 360 F.3d at 1006; <u>Miller</u>, 757 F.2d at 995.

6          4)      <u>Discussion</u>

7          The first factor, the probative value of the excluded statement, weighs in favor of

8  Lechuga because the statement tends to show that he lacked the intent to commit burglary.  The

9  fifth factor would also weigh in favor of Lechuga because the statement would have been a

10 major part of his defense.  The fourth factor also arguably weighs in Lechuga's favor as the

11 statement would have been the only evidence offered relating to the specific issue of whether he

12 mistook the victim's residence for his girlfriends.

13         However, the second factor, reliability, weighs most heavily against Lechuga.

14 The statement is self-serving, unverifiable and, as the trial court found, "easily imagined or

15 contrived."  Reporter's Transcripts at 99.  The third factor also weighs heavily against Lechuga,

16 as the jury would not have been able to meaningfully evaluate the statement.

17         The jury would not have been able to evaluate the statement as part of Lechuga's

18 in person testimony, but instead would have received the statement as part of the victim's

19 testimony.  The victim's testimony would have been limited to simply recounting the statement

20 and would not have provided the jury an opportunity to view the demeanor of the declarant.

21 Further the state would have been denied the opportunity for cross examination, further

22 inhibiting the jury's evaluation.

23         The weight of the second and third factors supporting exclusion, along with the

24 weight due California's interest underlying its evidentiary rules, exceeds the weight of the

25 factors supporting admission.  The exclusion of Lechuga's statement was not a violation due

26 process.

7

1 /////

2        The state court's rejection of this claim was neither contrary to, nor an

3 unreasonable application of, clearly established constitutional law and Lechuga is not entitled to

4 relief on this claim.

5        B.        Life Sentence

6               1)        Description of Claim

7        Lechuga argues that his sentence of 25 years to life, plus 20 years is "grossly

8 disproportionate to the degree of criminal culpability."  Petition at 6.  He argues that he has a

9 "very low I.Q.," suffers from mental health problems, including schizophrenia, and that the

10 commitment offense was not violent.  Id. at 7.  He therefore argues that his sentence constitutes

11 cruel and unusual punishment.  Id. at 6.

12               2)        State Court Opinion

13        The California Court of Appeal rejected this claim stating:

14        Regarding the nature of the offense, defendant acknowledges that
         he "does have a habit of going into other people's residences and
15        did so here."  He claims "nonviolent crimes are less serious than
         crimes marked by violence *or the threat of violence* " (quoting
16        Solem v. Helm (1983) 463 U.S. 277, 292-293; italics added), but
         he overlooks the threat of violence that is implicit whenever a
17        burglar enters an inhabited dwelling.  The fact no one was actually
         injured may lessen the absolute magnitude of the offense, but it
18        does not mean that the sentence was *grossly* disproportionate to the
         recidivist offense.  Because defendant has been convicted of nine
19        burglaries and has served four prior prison terms, the application
         of the three strikes law to this case is neither cruel nor unusual
20        punishment.

21 Opinion at 12.

22 /////

23               3)        Applicable Law And Discussion

24        In Lockyer v. Andrade, 538 U.S. 63 (2003), the United States Supreme Court

25 found that in addressing an Eighth Amendment challenge to a prison sentence, the "only relevant

26 clearly established law amenable to the [AEDPA] framework is the gross disproportionality

8

1    principle, the precise contours of which are unclear and applicable only in the 'exceedingly rare'

2    and 'extreme' case."  Id. at 73 (citing Harmelin v. Michigan, 501 U.S. 957, 1001 (1991); Solem

3    v. Helm, 463 U.S. 277, 290 (1983); and Rummel v. Estelle, 445 U.S. 263, 272 (1980)).  The

4    Supreme Court concluded that two consecutive twenty-five years to life sentences with the

5    possibility of parole, imposed in that case under California's Three Strikes Law following two

6    felony convictions for petty theft with a prior, did not amount to cruel and unusual punishment.

7    Andrade, 538 U.S. at 77; see also Ewing v. California, 538 U.S. 11 (2003) (holding that a

8    sentence of twenty-five years to life imposed for felony grand theft under California's Three

9    Strikes law did not violate the Eighth Amendment).

10           Following the decision in Andrade the Ninth Circuit held that a third strike

11   sentence of twenty-five years to life for a third shoplifting offense, a "wobbler" under state law[4],

12   constituted cruel and unusual punishment.  Ramirez v. Castro, 365 F.3d 755 (9th Cir. 2004).  In

13   so holding, the court relied upon the limited and non-violent nature of the petitioner's prior

14   criminal history and the fact that the petitioner's only prior period of incarceration had been a

15   single one-year jail sentence.  Id. at 768-69.  Thereafter, in Rios v. Garcia, 390 F.3d 1082 (9th

16   Cir. 2004), the Ninth Circuit distinguished the holding in Ramirez from the situation it

17   confronted, finding that the petitioner in Rios had a "lengthy criminal history," had "been

18   incarcerated several times," and that the prior strikes used to enhance his sentence had "involved

19   the threat of violence."  Id. at 1086.

20           While Lechuga's sentence is unquestionably lengthy, it cannot be said to be

21   "exceedingly rare" or "extreme."  His criminal history included eight prior convictions for first

22   degree burglary, as well as convictions for petty theft, resisting arrest and assault on a peace

23   officer.  While those offenses may not have involved serious violence every burglary involves at

24   a minimum the threat of violence against the occupant.  Further, unlike the petitioner in Ramirez,

25

26           [4] A "wobbler" is an offense that can be punished as either a misdemeanor or a felony
     under applicable law.  See Ferreira v. Ashcroft, 382 F.3d 1045, 1051 (9th Cir. 2004).

1   Lechuga had been committed to prison four times prior to his commitment offense.  Lechuga's

2   sentence is therefore not grossly disproportionate.

3          The state court's rejection of this claim was neither contrary to, nor an

4   unreasonable application of, clearly established constitutional law and Lechuga is not entitled to

5   relief on this claim.

6       C.    Romero Motion

7              1)    Description of Claim

8          Under California law trial courts have the discretion to dismiss prior strikes for

9   purposes of sentencing if doing so is in the interest of justice.  People v. Superior Court

10  (Romero),13 Cal.4th 497, 529-30 (1996).  Defense counsel request this discretion by filing a

11  Romero motion.

12         Prior to sentencing, Lechuga's trial counsel filed a Romero motion and vigorously

13  argued that seven of his eight prior convictions should be struck.  RT at 424.  The trial court

14  denied the Romero motion and sentenced Lechuga pursuit to California's Three Strikes Law.

15  RT at 443-44.  Lechuga argues the trial court's ruling was "an abuse of the court's discretion."

16  Petition at 10.

17  /////

18              2)    State Court Opinion

19         The California Court of Appeal rejected this claim stating:

20         Defendant was 49 years old, had a present conviction of first
           degree burglary, eight prior convictions for first degree burglary,
21         and prior convictions for resisting arrest, assault on a peace officer,
           and petty theft.  He had been committed to state prison four times.
22         The trial court commented, "it is hard to remember a case in which
           somebody has quite so many-I've had people with many priors but
23         [not] so many in the same category."

24         Defendant was diagnosed with major depressive disorder,
           polysubstance dependence, and mild mental retardation.  Family
25         members reported that during childhood he suffered from what is
           now known as attention deficit hyperactivity disorder.  During
26         adolescence, he began a heavy use of marijuana, LSD, and PCP.

                                    10

His mother received SSI for mental problems, although opinions differed as to whether she was mentally ill or a " 'system user.' " When defendant was approximately 13 years old, his mother divorced her husband and informed defendant that the husband, who had raised defendant, was not his biological father. Defendant was on SSI for his own mental problems when he was committed to jail.

The trial court concluded: "while I have sympathy for the history and the problems of the Defendant, he fits-with the one exception of mental retardation or a mild mental retardation, he fits pretty much the classic case for the strike system, which is someone who will not slow down, will not learn, and continues to reoffend.... [¶] ... I do not feel a showing is made that warrants the Court striking his prior burglary convictions in this case to get them down to either zero or to one.  There are just too many of them over too many years and too many times he returns to the same pattern of conduct, which I must assume is what happened here."

Defendant does not attempt to show that the foregoing reasoning was palpably arbitrary, capricious, or patently absurd.  (<u>People v.. Jennings, supra</u>, 81 Cal.App.4th at p. 1314.)  Instead, he argues that he "used no violence in the commission of the present offense[,]" and that "[a]ny violence involved was instigated by" Meadows.

However, as the prosecutor noted in opposing the motion, defendant's first degree burglary of an occupied dwelling is considered to be nonviolent only because the People chose not to plead and prove that a person, other than an accomplice, was present in the residence during the burglary.  (§ 667.5, subd. (c)(21).)  Although not pled, the statute reflects a legislative determination that a burglar is responsible for any expectable and predictable violence initiated by persons present in the dwelling. Defendant's suggestion that Meadows was responsible for any violence runs counter to the legislative determination.  Denial of the <u>Romero</u> motion was not an abuse of discretion.

Opinion at 9-10.

3)     <u>Applicable Law And Discussion</u>

This claim essentially involves an interpretation of state sentencing law.  "It is not the province of a federal habeas court to reexamine state court determinations on state law questions."  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991).  The standard of review for a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States (citations omitted)."  <u>Id.</u>  So long as a state sentence "is not based on

11

1   any proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated,

2   or enhanced by indigency, the penalties for violation of state statutes are matters of state

3   concern." Makal v. State of Arizona, 544 F.2d 1030, 1035 (9th Cir. 1976).  Thus, "[a]bsent a

4   showing of fundamental unfairness, a state court's misapplication of its own sentencing laws

5   does not justify federal habeas relief." Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994).

6   The Ninth Circuit has specifically refused to consider state law errors in the application of state

7   sentencing law. See, e.g., Brown v. Mayle, 283 F.3d 1019, 1040 (9th Cir. 2002), vacated on

8   other grounds, Mayle v. Brown, 538 U.S. 901 (2003) (Romero claim "is not cognizable on

9   federal habeas review").

10          The trial judge understood his discretion to strike the priors pursuant to Romero

11  but declined to do so after reviewing Lechuga's criminal record. RT at 436-44.  The decision not

12  to strike Lechuga's eight prior burglary convictions was not fundamentally unfair under the

13  circumstances of this case.  Lechuga has not established any unfairness in his sentencing and

14  therefore has not stated a cognizable federal claim.

15          D)      Jury Instruction

16                  1)      Description of Claim

17          At trial, Lechuga's counsel requested that the court instruct the jury pursuant to

18  CALJIC No. 2.21.2, which concerns the jury's evaluation of a "willfully false witness."  RT at

19  317.  Lechuga's counsel argued that victim Howard Meadows testified in a preliminary hearing

20  that his door "was only cracked opened" but testified at trial that the door was "more than 50

21  percent open." Id. at 318.  Counsel also argued that Meadows "refused to acknowledge" that he

22  fought with Lechuga, even though Lechuga's father testified that "he looked out and saw the two

23  men were fighting." Id.  The trial judge refused to give the instruction, finding the examples

24  raised "rather insignificant." Id.

25          Lechuga argues that if the jury had been instructed pursuant to CALJIC No.

26  2.21.2 they would have been aware they could "totally distrust" Meadows testimony, which

could have lead to reasonable doubt.  Petition at 9.  He argues it is therefore "reasonably

probable" that the if the court had issued this instruction he "would have achieved a more

favorable result."  Id.

2)  State Court Opinion

The California Court of Appeal rejected this claim, stating:

Defendant contends the trial court erred by refusing his request to
instruct the jury with CALJIC No. 2.21.2 (2003 Rev.), which
provides: "A witness, who is willfully false in one material part of
his or her testimony, is to be distrusted in others.  You may reject
the whole testimony of a witness who willfully has testified falsely
as to a material point, unless, from all the evidence, you believe the
probability of truth favors his or her testimony in other
particulars." Defendant claims the instruction was justified by
discrepancies between Meadows's testimony at the preliminary
examination and his ensuing testimony at trial.  We disagree.

The first discrepancy is as follows: at the preliminary hearing,
Meadows was asked, "Was the door to your bedroom opened?" He
replied, "It was cracked."

At trial, Meadows testified on direct examination, "I always have
[the door] open."  On cross-examination, this exchange ensued:

"Q.  [BY DEFENSE COUNSEL]: Okay.  Now, when your dog
first noticed the light, you indicated that your door was open,
right?

"A.  I never close my door.

"Q.  All right.  How far open was it?  Was it open just a crack?

"A.  *Maybe halfway, cracked open.*  It's never all-it is never all the
way open, but it is never all the way closed.

"Q.  So was it *cracked open* like-

"A.  *45, 50 percent*-I would say 50 percent."  (Italics added.)

Thus at trial, Meadows used the word "cracked" to describe a door
that was open "[m]aybe halfway," or "45, 50 percent."  At the
preliminary examination, Meadows had used the same word and
presumably had intended the same meaning.  No falsehood, willful
or otherwise, appears.

The second discrepancy is as follows: at the preliminary hearing,
Meadows testified that he tackled defendant at a fence across the

13

street and then dragged him back to Meadows's house, holding
defendant by the "[b]ack of his collar and the back of his ass."  At
trial, Meadows confirmed on cross-examination that he "grabbed
[defendant] by the back of the shirt and the back of the pants," and
"dragged [defendant] back to [Meadows's] house." [FN]  No willful
falsehood appears.

> FN.  At the preliminary examination, the magistrate
> chastised Meadows for using the word "ass" in court.  At
> trial, the word "pants" was chosen by defense counsel, not
> by Meadows.

The third discrepancy occurred at trial: Meadows denied punching
or kicking defendant and admitted that there "[m]ight have been a
little bit of roughing up."  Meadows's father testified that he
looked out the window and saw what he believed to be "two
people fighting[.]"  The father's mere belief that the two people
were "fighting" does not suggest that Meadows's testimony had
been *willfully* false.  CALJIC No. 2.21.2 was properly refused.

/////

Opinion at 6-7.

> 3)   Applicable Law

A challenge to jury instructions does not generally state a federal constitutional

claim.  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456

U.S. 107, 119 (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  Habeas corpus

is unavailable for alleged error in the interpretation or application of state law.  Middleton, 768

F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v.

Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  However, a "claim of error based upon a

right not specifically guaranteed by the Constitution may nonetheless form a ground for federal

habeas corpus relief where its impact so infects the entire trial that the resulting conviction

violates the defendant's right to due process."  Hines v. Enomoto, 658 F.2d 667, 672 (9th Cir.

1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)).  See also Prantil v. California, 843

F.2d 314, 317 (9th Cir. 1988) (To prevail on such a claim petitioner must demonstrate that an

erroneous instruction "so infected the entire trial that the resulting conviction violates due

process.")  The analysis for determining whether a trial is "so infected with unfairness" as to rise

to the level of a due process violation is similar to the analysis used in determining, under Brecht

1  v. Abrahamson, 507 U.S. 619, 623 (1993), whether an error had "a substantial and injurious

2  effect" on the outcome.  See McKinney v. Rees, 993 F.2d 1378, 1385 (9th Cir. 1993).

3        As with a claim that a trial court erred in *giving* a particular instruction, a claim

4  that a court erred in *omitting* an instruction requires a showing that the error so infected the

5  entire trial that the resulting conviction violated due process.  Henderson v. Kibbe, 431 U.S. 145,

6  154 (1977).  However, in such cases, the petitioner's burden is especially heavy, as an omission

7  is less likely to be prejudicial than an affirmative misstatement of the law.  Id. at 155.  Failure to

8  give a jury instruction which might be proper as a matter of state law does not, by itself, merit

9  federal habeas relief.  Miller, supra, 757 F.2d at 993.  Further, "[t]he necessity, extent and

10  character of additional instructions are matters within the sound discretion of the trial court."

11  Wilson v. United States, 422 F.2d 1303, 1304 (9th Cir. 1970).

12        4)    Discussion

13        As the appellate court noted, the points of contention raised by Lechuga

14  concerning Meadow's testimony are minor.  It is unlikely the jury would have viewed the

15  difference between a door being "cracked" versus "50 percent" open as significant enough to

16  discredit Meadow's testimony.  The difference between a "fight" and a "physical altercation" is

17  similarly insignificant.  Further it is not apparent that Meadow's testimony with respect to the

18  physical altercation was at all inconsistent as he admitted on cross-examination to

19  "manhandling" and "roughing up" Lechuga.  RT at 155-56.

20        Given the strength of the evidence supporting Lechuga's guilt and, as the trial

21  court characterized it, the "rather insignificant" discrepancies in Meadow's testimony, the trial

22  court's refusal to issue CALJIC 2.21.2 was not unreasonable.  Lechuga has not established that

23  the trial court's ruling had a substantial or injurious effect on the jury's verdict.  The state court's

24  rejection of this claim was neither contrary to, nor an unreasonable application of, clearly

25  established constitutional law and Lechuga is not entitled to relief on this claim.

26  /////

VI.    CONCLUSION

Accordingly, IT IS RECOMMENDED that petitioner's petition for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 10, 2009

Charlene H. Sorrentino

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE